## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

UNITED STATES OLYMPIC &
PARALYMPIC COMMITTEE,
a federally chartered corporation,

      Plaintiff,

v.

                                                      Civil Action No. _____

PRIME HYDRATION, LLC,

      Defendant.

---

## COMPLAINT

---

Plaintiff the United States Olympic & Paralympic Committee ("USOPC"), by and through its undersigned attorneys, as and for its Complaint against Prime Hydration, LLC, alleges as follows:

### PARTIES

1.     The USOPC is a federally chartered corporation with its principal place of business at One Olympic Plaza, Colorado Springs, Colorado 80909.

2.     Upon information and belief, Defendant Prime Hydration, LLC ("Prime Hydration") is a corporation organized under the laws of Delaware with a place of business at 2858 Frankfort Ave, Louisville, KY 40206.

### NATURE OF THE ACTION

3.     This is an action for unlawful use of Olympic trademarks in violation of the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220506(a) (the "Ted Stevens Act" or the

"Act"), trademark infringement, unfair competition, and dilution arising under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.*; the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*; and the common law of Colorado.

## JURISDICTION

4.      This Court has subject matter jurisdiction over USOPC's federal claims under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a), 2201, as this case presents an actual controversy involving federal questions arising under the Lanham Act and the Ted Stevens Act.

5.      This Court has supplemental jurisdiction over USOPC's state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because those claims are joined with substantial and related claims under the Lanham Act and are so related to the claims under the Lanham Act that they form part of the same case or controversy.

6.      This Court has personal jurisdiction over Defendant Prime Hydration because it has substantial and specific contacts with the United States and this District by virtue of, among other things, Prime Hydration is committing the unlawful acts as alleged herein in this District, including, but not limited to, using an infringing mark in connection with the sale and offering for sale of goods and services to customers in this District in stores located in Colorado and through its website and social media accounts which are accessible throughout the United States, including to persons within Colorado.

7.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims stated herein occurred in this District.

## FACTUAL BACKGROUND

8.      The Olympic Games are one of the most widely attended and viewed sporting events in the world. 206 countries will be represented in the upcoming 2024 Summer Olympics in Paris, France. More than 10,000 of the top athletes in the world will travel to Paris to compete. It is expected that 15 million tourists will visit Paris during the Games—and several billion more individuals will be watching the Games from home.

9.      The USOPC is a federally chartered, internationally known corporation that serves as both the National Olympic Committee and National Paralympic Committee for the United States.  As such, the USOPC is responsible for the training and funding of U.S. teams for the Olympic, Paralympic, Youth Olympic, Pan American and Parapan American Games, while serving as a steward of the Olympic Movement throughout the United States.  The USOPC relies significantly upon the licensing of its trademarks for its funding and the associated funding of the U.S. Olympic Team.

10.      Pursuant to the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220506, Congress granted the USOPC exclusive rights to commercially exploit certain marks and symbols related to the Olympic Movement in the United States, including "the symbol of the International Olympic Committee, consisting of 5 interlocking rings," the word "Olympic," and "any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee, the International Paralympic Committee, the Pan-American Sports Organization, or the [USOPC]."  36 U.S.C. § 220506(c)(4).

11.      As set forth in the Olympic Charter, the USOPC is obligated to protect Olympic intellectual property in the United States for the benefit of the Olympic Movement. In recognition and furtherance of the scope of the USOPC's responsibilities and undertakings, Congress granted the USOPC the exclusive right to use and control the use of Olympic

terminology and imagery within the United States.  *See The Ted Stevens Olympic and Amateur Sports Act*, 36 U.S.C. § 220506(a).

12.     The Ted Stevens Act authorizes the USOPC to file a civil action against the unauthorized use "for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition…[of] any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by" the USOPC or its affiliates. 36 U.S.C. § 220506(c).

13.     The intent of Congress in granting the USOPC exclusivity over the Olympic brand was to generate revenue to finance the United States' involvement in the Olympic Games. Although Congress charged the USOPC with the responsibility to finance U.S. participation in the Olympics, the USOPC does not receive financial assistance from the United States Government. *See U.S. Olympic Comm. v. Intelicense Corp., S.A.*, 737 F.2d 263, 266 (2d Cir. 1984) ("the USOC is the *only* NOC [National Olympic Committee] that does not receive formal financial assistance from the Government" (emphasis added)).

14.     As the United States Supreme Court has explained, the unambiguous intent of Congress in granting the USOPC exclusivity over the Olympic brand is to generate revenue to finance the United States' involvement in the Olympic Games. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987). "[I]t is clear that the Congressional intent in enacting [the Act] was to promote the United States Olympic effort by entrusting the USOC with unfettered control over the commercial use of Olympic-related designations" to "facilitate the USOC's ability to raise those financial resources from the private sector that are needed to fund the United States Olympic Movement." *Intelicense Corp.*, 737 F.2d at 266.

15.     The USOPC raises the money it needs to operate by, in large part, licensing use of its intellectual property to sponsors and licensees. These legitimate license fees pay to house, feed, train, and otherwise support U.S. Olympic athletes, and finance this country's participation in the Olympic Games.

16.     In addition to the marks granted to the USOPC by the Ted Stevens Act, the USOPC also owns numerous other trademarks, including the following:

| Mark/Name | Full Goods/Services | App. No./Reg. No. |
|---|---|---|
| OLYMPIC | (Int'l Class: 14) Ornamental lapel pins | RN: 4841553 SN: 86662400 |
| OLYMPIC | (Int'l Class: 25) Clothing, namely, T-shirts | RN: 2777890 SN: 78145195 |
| OLYMPIC | (Int'l Class: 08, 14) lapel pins (Int'l Class: 09, 16, 28) prints and publications, including pamphlets | RN: 0968566 SN: 72381518 |
| OLYMPIC | (Int'l Class: 41) Selecting and obtaining the most competent amateur athletes to represent the United States in international athletic competitions and events, and organizing international athletic competitions and events when they are celebrated in the United States | RN: 2311493 SN: 75598229 |
| OLYMPIC SPIRIT | (Int'l Class: 06) metal license plates | RN: 2296116 SN: 75607578 |
| GOING FOR THE GOLD | (Int'l Class: 41) Educational and entertainment services, namely, disseminating information regarding sports and athletic events via computer | RN: 3613818 SN: 78515601 |
| GO FOR THE GOLD | (Int'l Class 35) Promoting public awareness of the Olympic Movement and its ideals | RN: 3914587 SN: 85119041 |

| Mark/Name | Full Goods/Services | App. No./Reg. No. |
|---|---|---|
| TEAM USA | (Int'l Class: 16)<br>posters, bumper stickers, window clings | RN: 3848800<br>SN: 77809556 |
| TEAM USA | (Int'l Class: 35)<br>promoting public awareness of the Olympic Movement and its ideals<br>(Int'l Class: 36)<br>fundraising activities on behalf of athletes aspiring to compete in international competitions, by means of soliciting donations | RN: 3923207<br>SN: 85119002 |
| TEAM USA | (Int'l Class: 09)<br>Decorative magnets | RN: 4368709<br>SN: 85869531 |
| TEAM USA | (Int'l Class: 18)<br>Backpacks; Drawstring bags; Duffel bags; Luggage tags; Sports bags; Tote bags | RN: 4368710<br>SN: 85869561 |
| TEAM USA | (Int'l Class: 21)<br>Beer mugs; Coffee mugs; Drinking glasses; Drinking glasses, namely, tumblers; Shot glasses; Water bottles sold empty | RN: 4372689<br>SN: 85869767 |
| TEAM USA | (Int'l Class: 28)<br>Christmas tree ornaments | RN: 4368714<br>SN: 85869870 |
| TEAM USA | (Int'l Class: 15)<br>Percussion instruments, namely, cowbells | RN: 4867244<br>SN: 86717163 |
| TEAM USA | (Int'l Class: 24)<br>Cloth flags; Cloth pennants | RN: 4368713<br>SN: 85869780 |
| TEAM USA | (Int'l Class: 35)<br>promoting participation with and selection for the U.S. team for an international athletic event<br>(Int'l Class: 41)<br>Entertainment services in the nature of providing non-downloadable sports-related videos featuring the U.S. team for an international athletic event via the internet; providing information in the field of sports featuring the U.S. team for an international athletic event via the internet | RN: 4773080<br>SN: 86505061 |

| Mark/Name | Full Goods/Services | App. No./Reg. No. |
|---|---|---|
| TEAM USA | (Int'l Class: 14)<br>jewelry, namely, ornamental pins and ornamental lapel pins of soft enamel, cloisonne and precious metal | RN: 2455565<br>SN: 74522713 |
| TEAM USA | (Int'l Class: 22)<br>Lanyards for holding badges, keys and/or pins | RN: 4867243<br>SN: 86717119 |
| TEAM USA | (Int'l Class: 25)<br>clothing, namely, T-shirts, polo shirts, shirts, knit shirts, jerseys and tank tops, shorts, pants, sweaters, caps, hats, scarves, visors, warm-up suits, sweatshirts, jackets, vests, infant cloth bibs, pajamas, toddler and infant playsuits, rompers, overalls and creepers, | RN: 2774352<br>SN: 75975622 |
| TEAM USA | (Int'l Class: 14)<br>jewelry, namely, bracelets, necklaces | RN: 4368711<br>SN: 85869603 |
| TEAM USA | (Int'l Class: 43)<br>Hotels; Motels; Providing temporary accommodation | RN: 3183419<br>SN: 78784342 |
| THE OLYMPIAN & PARALYMPIAN | (Int'l Class: 16)<br>Printed newsletters about sports, competitions, athletes, and related activities of the U.S. Olympic and Paralympic Committee; Printed magazines concerning sports, competitions, athletes, and related activities of the U.S. Olympic and Paralympic Committee<br>(Int'l Class: 41)<br>Providing online newsletters in the field of sports, competitions, athletes, and related activities of the U.S. Olympic and Paralympic Committee via e-mail; Providing online newsletters in the field of sports, competitions, athletes, and related activities of the U.S. Olympic and Paralympic Committee | RN: 6694364<br>SN: 97148618 |
| OLYMPIANS MADE HERE | (Int'l Class: 41)<br>Organizing and conducting elite athletic competitions and programs; providing information online in the field of sports and athletics | RN: 5841302<br>SN: 88253586 |

17.     The USOPC has used the famous OLYMPIC trademark in interstate commerce since at least as early as 1896.  As a result of its long-standing and extensive use of the OLYMPIC mark, and the exclusive right to use the same as granted by the Act, the USOPC

owns significant trademark rights in the mark OLYMPIC.  In fact, the OLYMPIC mark is a famous trademark of the USOPC and became famous before Applicant used the OLYMPIC mark in connection with its beverage products.

18.     In anticipation of each Olympic Games, the USOPC engages in a robust licensing program, through which sponsors and other partners are authorized to use trademarks owned by the USOPC on a wide variety of goods and services. OLYMPIC marks are licensed for use on many products in many different industries, including beverages.  Because consumers have been exposed to sponsored uses in so many industries, they are likely to believe that any use of OLYMPIC trademarks to promote the sale of goods are under license.

19.     Specifically, the USOPC has an agreement with Coca-Cola that allows it exclusive use of OLYMPIC trademarks, including OLYMPIC and TEAM USA for beverages in the United States.  Coca-Cola made a significant monetary contribution for such rights and has extensively used the OLYMPIC trademarks in connection with the promotion and sale of beverages in the U.S. and abroad.  Much of the value of the sponsorship agreement is derived from its exclusivity.  The exclusivity of this agreement – which is vital to funding the training and entering of U.S. teams for the Olympic, Paralympic, Youth Olympic, Pan American and Parapan American Games – is threatened when individuals and organizations use USOPC trademarks without authorization.

20.     The Paris 2024 Olympic Games are taking place between July 26, 2024, and August 11, 2024.

21.     In a deliberate and willful attempt to trade on USOPC intellectual property, Defendant Prime Hydration has used the following Olympic-related terminology and trademarks on product packaging, Internet advertising and in promotions featuring a Prime Hydration flavor

and athlete Kevin Durant: OLYMPIC, OLYMPIAN, TEAM USA, and GOING FOR GOLD

("Infringing Marks").  Such use is without the USOPC's consent.

22.    A depiction of the Prime Hydration bottle showing the infringing uses is shown

below.




23.     A depiction of the Prime Hydration bottle showing the infringing uses is shown below in a social media post by Prime Hydration:



24.     Until July 19, 2024, Prime Hydration was showing the infringing bottle on its Instagram account as shown below:



25.     Prime Hydration also advertised the infringing bottle on its website, as shown

below:



26.     Prime Hydration also advertised the infringing bottle on various social media

platforms as shown in the screenshots from the Internet below:





27.     Upon information and belief, Prime Hydration provided ad copy to stores selling the

infringing product that prominently uses the OLYMPIC marks using the word OLYMPIC six times in ad

copy, including two uses of "Kevin Durant Olympic Prime Drink", "Celebrate Greatness with the Kevin Durant Olympic Prime Drink!", "Olympic Achievements", "Kevin Durant Olympic Legacy", and other uses



in the ad copy.

Kevin Durant Olympic Prime Drink

**Celebrate Greatness with the Kevin Durant Olympic Prime Drink!**

Step up your hydration game with the limited-edition Kevin Durant Olympic Prime Drink. This exclusive beverage celebrates the Olympic achievements of basketball legend Kevin Durant. Crafted with a unique, invigorating flavour, this drink features a coconut water base enriched with electrolytes, B vitamins, antioxidants, and BCAAs for optimal hydration and muscle recovery. Perfect for athletes and fans alike, this collectible item is now available for pre-order. Register your interest and be among the first to hydrate like a champion!

- **Limited Edition**: Special design inspired by Durant's Olympic legacy
- **Optimal Hydration**: Electrolytes, B vitamins, antioxidants, and BCAAs
- **Natural Ingredients**: Coconut water base for smooth, light taste
- **Pre-Order Now**: Delivery end of August 2024

28.     Upon information and belief, Prime Hydration provided ad copy to stores selling the infringing product that prominently uses the TEAM USA marks using the mark TEAM USA twice in ad copy, including PRIME HYDRATION Team USA Kevin Durant Drink", "TEAM USA's Kevin Durant" Olympic Prime Drink" and other uses in the ad copy.



29.     Upon information and belief, Prime Hydration provided ad copy to stores selling the infringing product that prominently uses the OLYMPICS marks using the mark OLYMPICS twice in ad copy, including two uses of "PRIME HYDRATION Drink, New Special Edition KEVIN DURANT USA OLYMPICS Bottle", "TEAM USA's Kevin Durant" Olympic Prime Drink" and other uses in the ad copy.



30.     Defendant used the goodwill associated with USOPC's intellectual property to sell and promote its products and its brand. This solicitation is evidenced by Defendant's blatant use of USOPC intellectual property online and use of USOPC's intellectual property on actual product.

31.     Defendant's infringement of USOPC intellectual property is willful. On July 10, 2024, USOPC's counsel contacted Prime Hydration and requested they cease infringement. However, Defendant has not discontinued all use of USOPC intellectual property.

32.     Upon information and belief, Defendant continued to ship product after receiving the letter of July 10. 2024.

33.     Defendant continues to display the infringing product on LinkedIn.



34.     Despite numerous requests from USOPC, Defendant did not remove all infringing social media posts. Defendant is still actively infringing USOPC marks.

35.     Consumers encountering Prime Hydration's use of Infringing Marks in connection with its goods and services are likely to mistakenly assume a connection with the USOPC because Defendant is using marks identical to USOPC's intellectual property.

36.     Plaintiff USOPC is not connected to Prime Hydration or the goods or services it offers under the Infringing Marks.

**FIRST CLAIM FOR RELIEF**
VIOLATION OF THE TED STEVENS OLYMPIC AND

AND AMATEUR SPORTS ACT 36 U.S.C. § 220506

37.     Plaintiff incorporates by reference the preceding paragraphs herein as if set forth in full.

38.     Pursuant to The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220506(c)(4), the USOPC may file a civil action against a person for the remedies provided in the Lanham Act if the person, without the consent of the USOPC, uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition, any trademark, trade name, sign, symbol, or insignia that falsely represents an association with, or authorization by, the USOPC or the IOC.

39.     As described above, Prime Hydration is and intends to continue engaging in the unauthorized commercial use of the OLYMPIC, OLYMPIAN, TEAM USA, and GOING FOR THE GOLD marks, thereby falsely representing association with or authorization by the USOPC, the IOC, and/or the Olympic Games.

40.     Prime Hydration' use of the OLYMPIC, OLYMPIAN, TEAM USA, and GOING FOR THE GOLD marks will continue to be without the authorization of the USOPC and the IOC, and will continue to violate the Ted Stevens Olympic and Amateur Sports Act.

41.     The use of the OLYMPIC, OLYMPIAN, TEAM USA, and GOING FOR THE GOLD marks tend to cause an association with the USOPC.  In addition, such use is likely to cause confusion, mistake, and deception among consumers as to the origin and quality of the products bearing the marks, as consumers are likely to believe that Prime Hydration' products and activities are authorized by, licensed or endorsed by, or associated with the USOPC, the IOC, and/or the Olympic Games.

42.     Prime Hydration's conduct has been and continues to be willful, deliberate, and in bad faith, with malicious intent to trade on the goodwill of the USOPC and the IOC.

43.     By its conduct, Prime Hydration has caused the USOPC damage and irreparable injury for which it has no adequate remedy at law, and Prime Hydration will continue to do so unless restrained and enjoined by this Court from further infringing the USOPC's marks and confusing the public.

44.     On information and belief, Prime Hydration has and will continue to receive revenues and profits as a result of its infringing use, to which Prime Hydration is not entitled, and the USOPC has suffered damages as a result of Prime Hydration's unlawful conduct, for which Prime Hydration is responsible.

45.     The USOPC has suffered additional damages as Prime Hydration is impinging upon the rights the USOPC has given to significant sponsors of the Olympics, resulting in damages of millions of dollars as to be determined at trial.

<u>SECOND CLAIM FOR RELIEF</u>
**VIOLATION OF THE LANHAM ACT 15 U.S.C. § 1114**

46.     Plaintiff incorporates by reference the preceding paragraphs herein as if set forth in full.

47.     Pursuant to 15 U.S.C. § 1114(1)(a), Plaintiff USOPC may bring a civil action against any person who, without the consent of the registrant, uses a registered mark in connection with the sale of goods or services wherein such use is likely to cause confusion, mistake, or deception. Based on the foregoing, Defendant is liable for trademark infringement of Plaintiff's OLYMPIC, TEAM USA, and GOING FOR THE GOLD marks. Plaintiff hereby asserts a claim against Defendants for injunctive relief pursuant to   15 U.S.C. § 1114(b) with respect to Defendant's infringement of the registered marks.

48.     On information and belief, Prime Hydration has and will continue to receive revenues and profits as a result of its infringing use, to which Prime Hydration is not entitled, and the USOPC has suffered damages as a result of Prime Hydration's unlawful conduct, for which Prime Hydration is responsible.

49.     The USOPC has suffered additional damages, as Prime Hydration is impinging upon the rights the USOPC has given to significant sponsors of the Olympics, resulting in damages of millions of dollars, as to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**15 U.S.C. § 1125(a)**

50.     The allegations in all preceding paragraphs are incorporated herein by reference.

51.     The USOPC owns several federal trademark registrations for OLYMPIC, TEAM USA, OLYMPIAN and GOING FOR THE GOLD as set forth above. The USOPC also owns common law rights in the mark, by virtue of, inter alia, the extensive use of said marks by the USOPC and its affiliates, as well as vast international publicity and media related to the same. The mark is also associated with, and point unambiguously to, the USOPC, its affiliates, and the institution of the Olympic Games.

52.     Given the sameness of Prime Hydration's usages and Plaintiff's OLYMPIC, TEAM USA, and GOING FOR THE GOLD marks, Defendant's current use and intended use constitutes and will constitute a false designation of origin, false or misleading description of facts, and false or misleading representations of fact tending wrongfully and falsely to describe or represent a connection or affiliation with the USOPC and/or the Olympic Games in violation of 15 U.S.C. §1125(a). Consumers are likely to be confused, mistaken or deceived as to the

affiliation, association or connection of Defendant's business activities with the USOPC, its affiliates, and/or the Olympic Games.

53.     Prime Hydration's use is likely to cause confusion, mistake, and deception among the consumers as to the origin and quality of the goods and services, as consumers are likely to believe that Defendant's products and activities are authorized by, licensed or endorsed by, or associated with the USOPC, its affiliates, and/or the Olympic Games.

54.     Not only will the USOPC be irreparably injured because of its loss of goodwill and reputation if Defendant continues to use the Infringing Marks, the USOPC will suffer damages as a result of such conduct.

55.     Defendant's conduct has been and continues to be willful, deliberate, and in bad faith.

56.     By its conduct, Defendant has caused USOPC damage and irreparable injury for which it has no adequate remedy at law, and Defendant will continue to do so unless restrained and enjoined by this Court from further diluting the USOPC's marks.

57.     On information and belief, Prime Hydration has and will continue to receive revenues and profits as a result of its infringing use, to which Prime Hydration is not entitled, and the USOPC has suffered damages as a result of Prime Hydration's unlawful conduct, for which Prime Hydration is responsible.

58.     The USOPC has suffered additional damages, as Prime Hydration is impinging upon the rights the USOPC has given to significant sponsors of the Olympics, resulting in damages of millions of dollars, as to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**TRADEMARK DILUTION**
**15 U.S.C. § 1125(c)**

59.     The allegations in all preceding paragraphs are incorporated herein by reference.

60.     The USOPC has used the famous OLYMPIC trademark in interstate commerce since at least as early as 1896, which is prior to any use by Defendant.  As a result of its long-standing and extensive use of the OLYMPIC mark, and the exclusive right to use the same as granted by the Act, the USOPC owns significant trademark rights in the mark OLYMPIC.  The OLYMPIC and mark is a famous trademark of the USOPC and became famous before Applicant used the OLYMPIC mark in connection with its beverage products.

61.     Indeed, the OLYMPIC marks have been used in commerce by the USOPC for decades, and billions of viewers around the globe are expected to tune into the Games this summer. The Olympic Games are among the most well-known sporting events in the world and are, certainly, famous for the purposes of 15 U.S.C. § 1125(c).

62.     As described above, Prime Hydration is and intends to continue engaging in the unauthorized commercial use of the OLYMPIC, OLYMPIAN, TEAM USA, and GOING FOR THE GOLD marks, thereby falsely representing association with or authorization by the USOPC, the IOC, and/or the Olympic Games.

63.     Prime Hydration's use will dilute the distinctive quality of the famous OLYMPIC marks under Section 43(c) of the Lanham Act and injure the USOPC.

64.     On information and belief, Prime Hydration has and will continue to receive revenues and profits as a result of its infringing use, to which Prime Hydration is not entitled, and the USOPC has suffered damages as a result of Prime Hydration's unlawful conduct, for which Prime Hydration is responsible.

65. The USOPC has suffered additional damages, as Prime Hydration is impinging upon the rights the USOPC has given to significant sponsors of the Olympics, resulting in damages of millions of dollars, as to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**COLORADO CONSUMER PROTECTION ACT**
**(Colo. Rev. Stat. § 6-1-101)**

66. The allegations in all preceding paragraphs are incorporated herein by reference.

67. Defendant's misleading use of the Infringing Marks causes a likelihood of confusion or of misunderstanding as to the source of the products or services being promoted by Defendant.

68. Defendant's use of the Infringing Marks also causes likelihood of confusion or misunderstanding as to Defendant's affiliation, connection, or association with, or certification by, the USOPC.

69. On information and belief, Prime Hydration has and will continue to receive revenues and profits as a result of its infringing use, to which Prime Hydration is not entitled, and the USOPC has suffered damages as a result of Prime Hydration's unlawful conduct, for which Prime Hydration is responsible.

70. The USOPC has suffered additional damages, as Prime Hydration is impinging upon the rights the USOPC has given to significant sponsors of the Olympics, resulting in damages of millions of dollars, as to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION COLORADO**
**COMMON LAW**

71. The allegations in all preceding paragraphs are incorporated herein by reference.

72.    This is a claim for common law unfair competition. Defendant's conduct trades on USOPC's valuable intellectual property.

73.    Defendant's current and intended use constitutes trademark infringement and unfair competition under the common law of Colorado.   Such actions constitute use in commerce of an identical and confusingly similar mark in connection with the sale, offering for sale, distribution, and advertising of products and/or services in a manner likely to cause confusion, mistake, and deception as to the source or origin of Defendant's goods and services, or the affiliation, sponsorship, or other relationship between the parties.

74.    Defendant's conduct has been and continues to be willful, deliberate, and in bad faith, with malicious intent to trade on the goodwill associated the USOPC's marks.

75.    Defendant's deceptive trade practices have had and will continue to have a significant negative impact on the public as actual and potential consumers of USOPC's products and services.

76.    By its conduct, Defendant has harmed and deceived the public and has inflicted damage and irreparable injury upon the USOPC for which it has not adequate remedy at law, and Defendant will continue to do so unless restrained and enjoined by this Court from further infringing the USOPC's marks and confusing the public.

77.    The USOPC has suffered additional damages as Prime Hydration is impinging upon the rights the USOPC has given to significant sponsors of the Olympics, resulting in damages of millions of dollars as to be determined at trial.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the USOPC demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, the USOPC prays for judgment against Defendant as follows:

a)     An order that Defendant's past, current and future use of the Infringing Marks constitute and will constitute a violation of the Ted Stevens Olympics and Amateur Sports Act;

b)     An order that Defendant's past, current and future use of the Infringing Marks constitutes and will constitute trademark infringement prohibited by the Lanham Act;

c)     An order that Defendant's past, current use and future use of the Infringing Mark constitutes and will constitute false advertising and unfair competition prohibited by the Lanham Act;

d)     An order that Defendant's past, current and future use of the Infringing Mark constitutes and will constitute unfair competition under Colorado law;

e)     An order that Defendants' past, current use and intended future use of the Infringing Marks constitutes and will constitute trademark infringement and unfair competition under Colorado common law;

f)     An order that Defendants and any companies or business entities under their control, their employees, agents, successors and assigns, and all those persons in active concert or participation with them, are preliminarily and permanently enjoined and restrained from: commercially using the Infringing Marks or any confusingly similar variation of the Marks;

g)     An order requiring recall of any product bearing the Infringing Marks or any confusingly similar variation of the Marks;

h)      Award USOPC all profits associated with the sale of infringing products;

i)      Award USOPC damages for harm to its sponsorship agreements;

j)      Award USOPC the lost sponsorship costs associated with placing USOPC marks

        upon products;

k)      Award USOPC the lost sponsorship costs associated with placing USOPC marks

        in advertising;

l)      Award USOPC's costs of this suit and its reasonable attorneys' fees in accordance

        with 15 U.S.C. § 1117, C.R.S. § 6-1-113, and other applicable Colorado law;

m)       Award USOPC trebled damages for willful infringement;

n)      Award USOPC punitive damages under applicable Colorado law;

o)      Award USOPC prejudgment and post-judgment interest as recoverable under

        statute and common law on all sums; and

p)      Award such other and further relief as the Court may deem just, proper, and

        equitable under the circumstances.

Date:   July 19, 2024                    Respectfully submitted,


MERCHANT & GOULD P.C.

*/s/James W. Beard*
James W. Beard
jbeard@merchantgould.com
Alana L. LeFebvre
alefebvre@merchantgould.com
1801 California Street, Suite 3300
Denver, Colorado 80202
(303) 357-1670

Scott W. Johnston (*pro hac vice* forthcoming)
sjohnston@merchantgould.com
Gregory C Golla (*pro hac vice* forthcoming)
ggolla@merchantgould.com
150 South Fifth Street, Suite 2200
Minneapolis, Minnesota 55402
Tel.:    (612) 332-5300
Fax:     (612) 332-9081

*Attorneys for United States Olympic & Paralympic Committee*